UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

DEBORAH ROTHSCHILD,

                Plaintiff

  -against-

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, MELISSA
AVILES-RAMOS individually and
as Chancellor of the Department of Education
of the City of New York, and KATHERINE RODI
individually and as Director of Employee
Relations and Officeof Professional Investigations,

                Defendant
_____x

**COMPLAINT**
*Jury Trial Demanded*

PLAINTIFF Deborah Rothschild, ("Plaintiff) by and through her undersigned attorney Stewart Lee Karlin, Stewart Lee Karlin Law Group, P.C., sues the Defendant the Department of Education of The City of New York (henceforth "Defendant") and and Melissa Aviles-Ramos individually and as Chancellor of the Department of Education of the City of New York alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff seeks injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages for the deprivation of constitutionally protected substantive due process rights by Defendant the New York City Department of Education of the City of New York ("DOE").

2. Plaintiff was punished by her employer because of her congenital medical condition and religious beliefs and which prohibited her from getting vaccinated with

1

the COVID-19 vaccine, and was never given any accommodation by her employer, in direct violation of State and Federal Laws, 42 U.S.C. 1983, and the First and Fourteenth Amendment to the United States Constitution.

3. The punishment given Plaintiff by Defendant was that her fingerprints were secretly placed on the Ineligible/Inquiry or "no hire" Problem Code List without any information on how to remove her name from this list or that her personal information was coded in the first place.

## PARTIES

4. Plaintiff was an employee for the Department of Education of the City of New York in good standing as a speech pathologist since 1994. As such, she had protected liberty and property rights to her position as a tenured teacher. Plaintiff has lived in New Jersey since 1999.

5. At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, and First and Fourteenth Amendments to the United States Constitution, which prohibits any diminution of tenure rights without Just Cause, and retaliation against individuals, such as Plaintiff herein. Defendant is within the jurisdiction of this Court with offices in Brooklyn, N.Y. Defendant Chancellor Aviles-Ramos is the Chancellor of the DOE and was acting individually and in her official capacity as Chancellor at all times relevant in the complaint. Defendant

Katherine Rodi is the Director of Employee Relations and Office of Professional Investigations and was acting individually and on behalf of the DOE at all times relevant in the complaint.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law").

7. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street in Brooklyn N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

8. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims.

## FACTUAL STATEMENT

9. Plaintiff, a stellar Speech Pathologist, started work for the Defendant in 1994 and obtained tenure in 1997.

10. In March 2020 Defendant closed all schools in New York City. Plaintiff, worked remotely and was medically accommodated with an approved doctors note until June 2021.

11. In August 2021, the NYC Mayor issued over a hundred "emergency" orders that collectively functioned to mandate the COVID vaccine ("CVM") for nearly every working person in the City. But not everyone was required to take it. In the Executive Order available at https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62, Mayor Adams carved out exemptions for professional athletes, performers, and their entourages, election workers, school bus drivers and delivery personnel, as well as most of the private sector. All received exceptions.

12. Due to these emergency orders, the CVM cannot be seen as neutral and generally applicable.

13. Defendant opened all schools in September 2021 and all employees, including Plaintiff, were called to return to their buildings.

14. On September 10, 2021, after an Impasse brought Arbitrator Martin Scheinman to the bargaining table with the DOE and UFT, Scheinman issued his Arbitration Award that required all teachers (including Plaintiff) in New York City who refused the Vaccine on religious or medical grounds. The COVID Vaccine Mandate (CVM) for employees of the Defendant ordered all employees to get vaccinated by October 1, 2021, and submit a valid vaccination card to the Solas online database by October 4, 2021.

15. On or about September 19, 2021, Plaintiff also applied for a medical exemption due to chronic medical conditions that include a genetic mutation MTHFR disorder and elevated

4

homocysteine levels. Due to these medical conditions, she was at an increased risk of developing complications from the current COVID 19 vaccine

16. On or about September 19, 2021, Plaintiff applied for a religious exemption accommodation. Plaintiff who is a practicing Jew had a sincere religious belief preventing her from being vaccinated.

17. On September 22, 2021, Plaintiff was denied a religious exemption accommodation.

18. On October 6, 2021, Plaintiff was denied a medical exemption

19. On October 6, 2021, Plaintiff was placed on Leave Without Pay stating that she cannot enter her workplace, school site or nor can she work off-site.

20. On or about November 19, 2021, Plaintiff was advised that she could appeal the denial of her medical and religious exemption.

21. On January 7, 2022, the appeal was acknowledged by the Defendant

22. On February 15, 2022, Plaintiff was denied the request for a religious exemption.

23. Thereafter, on February 18, 2022, Plaintiff was placed on leave without pay.

24. On or about August 16, 2022, Plaintiff resubmitted her request for religious exemption and also applied for a medical exemption due to chronic medical conditions that include a genetic mutation MTHFR disorder and elevated homocysteine levels. Due to these medical conditions, she is at an increased risk of developing complications from the current COVID 19 vaccine.

25. The Defendant failed to respond to this additional request.

26. Plaintiff was terminated on September 16, 2022.

27. In November 2022, Plaintiff became aware that her fingerprints were tagged in the New York City Department of Education's 'Problem Code' at the Human Resources' Office of Personnel Investigations but was never told the reason for the problem code.

28. Plaintiff was also placed on the 'Problem Code' at the Human Resources' Office of Personnel Investigations. This means that Defendants placed her fingerprints in a database at the Office of Personnel Investigations. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or have shown to be incompetent. Neither of these labels applies to Plaintiff's work or career.

29. Because the 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or incompetency, Plaintiff has been stigmatized without a name clearing hearing on the matter, before putting her fingerprints into a Problem code database.

30. Therefore the New York City Department of Education has considered Plaintiff as not getting vaccinated as 'misconduct' which means that Plaintiff is unemployable as a teacher in education.

31. Plaintiff remains coded for misconduct because of her sincerely held religious beliefs and her congenital medical condition.

32. In fact, Plaintiff was recently hired by the DOE and received a congratulatory hiring letter but ten minutes later the offer was rescinded due to the Problem Code.

**FIRST CLAIM FOR RELIEF-FOR RELIGIOUS DISCRIMINATION**

33. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above as if the same were fully set forth at length herein.

6

34. In the September 10, 2021 Award, Arbitrator Scheinman created a very narrow, discriminatory definition for religious exemptions that, he knew was without basis in law:

   "Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy) . Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations. (e.g. Christian Scientists)"(p. 9)

35. The procedures cited in the Award were designed to unconstitutionally narrow the definition of what beliefs could qualify for religious or medical exemptions or accommodations. Most religions were excluded from protection and access to accommodation.

36. There is a clear distinction between the City's public sector vaccination mandates themselves, which no union—including the UFT—agreed to, and pay and personnel policies adopted to implement the imposed mandates. Plaintiffs' union, the UFT, never agreed to ratify the CVM as a condition of employment and the CBA never changed.

37. LWOP was stunningly in violation of all the rights Plaintiff had as a tenured teacher. Human Resources law does not have any forced leave without pay. Leaves are voluntary. Scheinman wrote in his Award that the LWOP was not disciplinary because he was concerned that an arbitrator at §3020-a could decide that the Respondent (charged teacher) was not guilty of the charged conduct and would not terminate the individual. Martin Scheinman did not want to relinquish control over termination of everyone who appeared before his panel. Martin Scheinman was the author of the 3020-a Law and the UFT CBA with the rules of procedure (Article 21G).

38. The details for the granting of religious exemptions and medical accommodations that

were cited in the Award of Martin Scheinman were considered the "challenged criteria" and "constitutionally unsound" by the Court of Appeals in the case Kane/Keil v The City of New York (21-cv-2678) on November 28, 2021. The Scheinman Award was thrown out, and the LWOP process became unlawful as a matter of law.

39. The United States Court of Appeals for the Second Circuit merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation was required.. They wrote, "In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."

40. The new procedure was no better than that used by the SAMS Panel. According to Eric Eichenholtz, the attorney at the City Law Department who created the Citywide Panel, from October 2021 through December 2022 religious and medical accommodations were given to thousands of applicants from all agencies in NYC, he knew nothing about undue burdens or costs for granting religious requests, but somehow upon information and belief about 170 did get approved.

41. The Citywide Panel failed to comply with the directive from this Court to follow Title VII and Human Rights Law.

42. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are

is a false pretext to cover for the Defendants' explicit religious discrimination.

43. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in *Groff v Dejoy*, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ….."

Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue."  Bias or hostility to a religious practice or accommodation cannot supply a defense."

44. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to induce her to relinquish her protected beliefs in order to submit to a vaccine, and then punished her for not agreeing to get the vaccine which violated her religious beliefs.

45. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith terminated and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

46. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion in violation of her Constitutional rights to property, liberty and a due process 3020-a hearing, 42 U.S.C. § 1983 applying the First Amendment and Fourteenth Amendment.

## SECOND CLAIM FOR RELIEF
## FAILURE TO REASONABLY ACCOMMODATE

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above as if the same were fully set forth at length herein.

48. Plaintiff's medical condition and sincerely held religious beliefs forbid her from getting vaccinated with the COVID-19 vaccine.

49. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs and her congenital medical condition yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in *Groff v Dejoy*,

50. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

## THIRD CLAIM FOR RELIEF
## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above as if the same were fully set forth at length herein.

52. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct.

53. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

54. New York City was the only school district location in New York State which mandated getting vaccinated or be terminated for public employees. New York City was also the only school district where the tenure law was ignored and tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing.

55. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

56. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

57. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her medical condition and religious beliefs, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her sincere religious beliefs in violation of 42 U.S.C. § 1983 applying the 14th Amendments.

## FOURTH CLAIM FOR RELIEF
## A VIOLATION OF PLAINTIFF'S RIGHTS TO A CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A

58. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above as if the same were fully set forth at length herein.

59. Plaintiff was punished with wrongfully being disciplined for her alleged "insubordination" in not getting vaccinated with the COVID vaccine without a §3020-a hearing and no accommodation offers or review by the Defendants.

60. Education Law Section §3020, Chapter 16, Title 4, Article 61 states as follows:

    "Discipline of teachers.

    1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;
    2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

61. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her religious exemption/accommodation. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

62. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause.

63. As a result of the Defendant's actions and in actions as set forth above, Plaintiff has been, and continues to be, deprived of her Federal rights under 42 U.S.C., Section 1983 and the fourteenth amendment due process rights and her first amendment rights of the U.S. Constitution.

64. As a result of Defendant's actions, Plaintiff suffered and was damaged.

65. Defendant has deprived Plaintiff of such rights under color of State Law.

<b>PLAINTIFF DEMANDS A TRIAL BY JURY</b>

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Reinstating Plaintiff to her tenured position, salary steps and raises, earned before October 2021, in full, with benefits; and

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay, terminated andassigning her a problem code;

3. Compensatory damages for past and future economic harm;

4. An Award of reasonable Attorney fees and litigation costs;

5. Granting such other and further relief that the Court seems just and proper.

Dated: New York, New York
       March 17, 2025

                                            STEWART LEE KARLIN
                                            LAW GROUP, P.C.

                                            _____
                                            Stewart Lee Karlin, Esq.
                                            111 John Street, 22nd Floor
                                            New York, NY 10038
                                            (212) 792-9670
                                            slk@stewartkarlin.com